IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WEST COAST PRODUCTIONS, INC.<br><br>    *Plaintiff*,<br><br>v.<br><br>SWARM SHARING HASH FILE<br>9A43B11EB6A42DDDA63FACF61790BD4D3BDFDDDE<br>AND DOES 1-1,980.<br><br>    *Defendants*. | Case No. TBD<br><br>***JURY TRIAL DEMANDED*** |

## COMPLAINT

Plaintiff West Coast Productions, Inc. ("West Coast Productions") brings this action against Defendants Swarm Sharing Hash File 9A43B11EB6A42DDDA63FACF61790BD4D3BDFDDDE ("Hash 9A43"); and Does 1 through 1,980 ("John Doe Defendants") alleging copyright infringement and contributory copyright infringement, and seeking damages and injunctive relief. West Coast Productions alleges as follows:

### JURISDICTION AND VENUE

1. This is a suit for copyright infringement and contributory copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. Venue in this District is proper pursuant to 28 U.S.C. § 1391 (b) and 28 U.S.C. § 1391 (b) and 28 U.S.C. § 1400(a).

3. This court has personal jurisdiction over Defendants because not only are some of the Defendants residents of this State, including upon information and belief in this District, but because all of the Defendants conspired to and did commit acts of copyright infringement and contributory copyright infringement nationally and worldwide, including in this State and upon information and belief in this District. Defendants, therefore, should anticipate being haled into court in this State.

4. Specifically, Defendants, whose true identities are unknown at this time, acted in a collective and interdependent manner via the internet in the unlawful reproduction and distribution of Plaintiff's copyrighted motion picture, "Phat Black Juicy Anal Booty 8," ("Motion Picture") by means of interactive "peer-to-peer" ("P2P") file transfer technology protocol called BitTorrent.

5. This case involves one "swarm" in which numerous Defendants engaged in mass copyright infringement of Plaintiff's Motion Picture. Each Defendant illegally uploaded and shared Plaintiff's Motion Picture within this swarm. Upon information and belief, each defendant was a willing and knowing participant in this swarm and engaged in such participation for the purpose of infringing Plaintiff's copyright.

6. Upon information and belief, each Defendant was a willing and knowing participant in the swarm at issue and engaged in such participation for the purpose of infringing Plaintiff's copyright.

7. By participating in the swarm, each Defendant participated in the same transaction, occurrence, or series of transactions or occurrences as at least the other defendants in the same swarm. Specifically, the span of each Defendant's participation in the swarm shows that his or her participation in the swarm links to all of the other Defendants' involvement in the

swarm. Swarm 9A43 includes all 1,980 Defendant Doe participants. Exhibit A. As set forth in Figure 1 below, Doe 1418 participated in the swarm at least on November 1, 2011 through April 9, 2012. Exhibit B. By participating at least early during late May to early April, Doe 1418 simultaneously participated in the swarm with many other Doe Defendants, including Doe 1808, who participated from March 30, 2012 through May 12, 2012. *Id.* Doe 1808 simultaneously participated with, among others, Doe 1884, who participated in the swarm from April 12, 2012 through at least June 6, 2012. *Id.* This example demonstrates that each Doe in the 9A43 Hash is linked to every other Doe in the 9A43 Hash.

|          | Date from 2011/11/01 till 2012/05/19 |
|----------|--------------------------------------|
|          | Hash 9A43B11EB6A42DDDA63FACF61790BD4D3BDFDDDE |
| Doe 1418 | 11/01 - 04/09 |
| Doe 1808 | 03/30 - 05/12 |
| Doe 1884 | 04/22 - 05/19 |

Figure 1

8. P2P networks, at least in their most common form, are computer systems that enable Internet users to: 1) make files (including motion pictures) stored on each user's computer available for copying by other users or peers; 2) search for files stored on other users' computers; and 3) transfer exact copies of files from one computer to another via the Internet. The particular P2P protocol at issue in this suit is called "BitTorrent."

9. For example, user John Doe 942 of Louisiana initiated his or her infringing conduct by first intentionally logging into the one of many BitTorrent client repositories known for their large index of copyrighted movies, television shows, software and adult videos. John Doe 942 then intentionally obtained a torrent file (the "Swarm Sharing Hash File" at issue in this suit, Hash 9A43) for Plaintiff's Motion Picture from the index and intentionally loaded that torrent file into a computer program designed to read such files.

10. With the torrent file intentionally loaded by John Doe 942, his or her BitTorrent program used the BitTorrent protocol to initiate simultaneous connections with hundreds of other users possessing and "sharing" copies of the digital media described in Hash 9A43, namely, Plaintiff's Motion Picture, including with, upon information and belief, other identified John Doe Defendants. The program coordinated the copying of Plaintiff's Motion Picture to John Doe 942's computer from the other users, or peers, sharing the film. As the Motion Picture was copied to John Doe 942's computer piece by piece, these downloaded pieces of Plaintiff's Motion Picture were then immediately available to all other Defendants for those Defendants' uses from John Doe 942's computer.

11. Each of the John Does 1-1,980 performed the same acts as those described for John Doe 942, in paragraphs 9 and 10. Each of these Defendants also immediately became an uploader, meaning that each Defendant's downloaded pieces were immediately available to other users seeking to obtain the file, without degradation in sound or picture quality. It is in this way that each Defendant simultaneously copied and distributed the Motion Picture. Thus, each participant in the BitTorrent was an uploader (distributor) and a downloader (copier) of the illegally transferred files. Here, upon information and belief many members of the swarm at issue downloaded and uploaded portions of Plaintiff's Motion Picture to each other.

12. This interactive, simultaneous data-sharing connection is often referred to as a "swarm" and leads to a rapid viral spreading of a file throughout peer users. As more peers join the swarm, the likelihood of a successful download increases. Because of the nature of a BitTorrent protocol, any user that has downloaded a piece prior to the time a subsequent user downloads the same file is automatically a source for the subsequent peer so long as that prior

user is online at the time the subsequent user downloads a file. Thus, after a successful download of a piece, the piece is made available to all other users.

13. Thus, a Defendant's distribution of even a single unlawful copy of the Motion Picture can result in the nearly instantaneous worldwide distribution of that single copy to an unlimited number of people. In this case, each Defendant's copyright infringement built upon the prior infringements, in a cascade of infringement.

14. Essentially, because of the nature of the swarm uploads and downloads as described above, every John Doe infringer, in concert with its John Doe swarm members, is simultaneously allowing others to steal (download from the swarm) Plaintiff's copyrighted materials in numerous jurisdictions around the country, including this jurisdiction. This illegal simultaneous data-sharing swarm is performed because each John Doe acts in an interactive manner with other John Does, including with, upon information and belief, other identified John Doe defendants, allowing other users to illegally download the unlawfully obtained copyrighted materials at issue in this action. Thus, there is a significant amount of infringement in this District, and a significant transmission of infringing materials to and from this District.

15. Additional acts occurred within this district. For example, upon information and belief, a total of 10 of the defendants utilize CenturyLink, Inc. (including ISPs identified as Qwest Communications and CenturyTel Internet Holdings), a Monroe, Louisiana-based internet service provider, for their internet service. Through this Louisiana-based ISP, these defendants engaged in the unlawful downloading of infringing material.

16. Further, upon information and belief, geolocation technology places a total of at least 99 of the John Doe within the state of Louisiana, and therefore their unlawful uploading of materials to others occurred in this district.

17. Upon information and belief, many John Doe Defendants also acted in concert with other John Doe swarm members and Defendants by participating in "Peer Exchange." Peer Exchange is a communications protocol built into almost every BitTorrent protocol which allows swarm members to share files more quickly and efficiently. Peer Exchange is responsible for helping swarm members find more users that share the same data. Thus, each swarm member is helping all other swarm members participate in illegal file sharing, regardless of geographical boundaries.

18. Upon information and belief, many John Doe Defendants also acted in concert with other John Doe swarm members and Defendants by linking together globally through use of a Distributed Hash Table. A Distributed Hash Table is a sort of world-wide telephone book, which uses each file's "info-hash" (a unique identifier for each torrent file) to locate sources for the requested data. Thus, swarm members are able to access a partial list of swarm members rather than being filtered through a central computer called a tracker. By allowing members of the swarm to rely on individual computers for information, this not only reduces the load on the central tracker, but also means that every client that is sharing this data is also helping to hold this worldwide network together.

19. The torrent swarm in this case is not an actual entity, but is rather made up of numerous individuals, located in various jurisdictions, acting in concert with each other, to achieve the common goal of infringing upon the Plaintiff's copyright. Upon information and belief, of the total 1,980 John Doe Defendants from the 9A43 Hash, geolocation technology places at least 99 of them in the state of Louisiana (thus, at least 43% of that swarm is in Louisiana). These 99 Defendants used the BitTorrent technology described herein to intentionally copy from and distribute to Defendants nationwide. Likewise, by copying from and

distributing to Louisiana Defendants, Defendants nationwide purposefully availed themselves to the jurisdiction of this Court and should anticipate being haled into court in this State.

## PARTIES

20. Plaintiff is a California corporation located at 10040 Remmet Ave, Chatsworth, California, 91311, that produces, markets and distributes motion pictures.

21. Defendants are a group of BitTorrent users or peers whose computers are collectively interconnected within a swarm for the sharing of unique files. The particular file a BitTorrent swarm is associated with has a unique "hash" (a file identifier generated by an algorithm developed and implemented by the National Security Agency). The Swarm Sharing Hash File or "hash file" or "torrent file" in this case is 9A43B11EB6A42DDDA63FACF61790BD4D3BDFDDDE ("Hash 9A43").

22. This hash file provides access to an unauthorized copy of Plaintiff's copyrighted Motion Picture.

23. Defendants' infringements allow them and others to unlawfully obtain and distribute unauthorized copies of Plaintiff's Motion Picture for which Plaintiff spent a substantial amount of time, money and effort to produce, market and distribute. Plaintiff currently sells the Motion Picture for $24.95, and it is available at least on its website at: http://www.westcoastprod.com/xcart/product.php?productid=18342&cat=0&page=1.

24. Each time a Defendant unlawfully distributes a free copy of Plaintiff's copyrighted Motion Picture to others over the Internet, particularly via BitTorrent, each recipient can then distribute that unlawful copy to others without degradation in sound or picture quality. Thus, a Defendant's distribution of even one unlawful copy of a motion picture can result in the

nearly instantaneous worldwide distribution to a limitless number of people. Plaintiff now seeks redress for this rampant infringement of its exclusive rights in its Motion Picture.

25. Despite Plaintiff's use of the best available investigative techniques, it is impossible for Plaintiff to identify Defendants by name at this time. Thus, the true names and capacities, whether individual, corporate, associate or otherwise, of John Doe Defendants 1-1,980 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.

26. Each Defendant is known to Plaintiff by the Internet Protocol ("IP") address assigned to that Defendant by his or her internet Service Provider ("ISP") on the date and at the time at which the infringing activity of each Defendant was observed. This information is provided in the attached Exhibit A. In addition, and as provided in Exhibit A, Plaintiff has learned the ISP for each Defendant, the torrent file copied and distributed by each Defendant, the BitTorrent client application utilized by each Defendant, and the location of most Defendants (by state) at the time of download as determined by geolocation technology.

27. Plaintiff believes that information obtained in discovery will lead to the identification of each John Doe Defendant's true name and permit the Plaintiff to amend this Complaint to state the same. Specifically, Plaintiff intends to subpoena the ISPs that issued the John Doe Defendants' IP addresses in order to learn the identity of the account holders for the IP addresses.

28. Plaintiff further believes that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this Complaint as Defendants, since monitoring of online infringement of Plaintiff's Motion Picture is ongoing.

## STATEMENT OF FACTS

### THE COPYRIGHT

29. Plaintiff is, and at all relevant times has been, the copyright owner of exclusive rights under United States copyright with respect to the Motion Picture.

30. The Motion Picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

31. West Coast Productions, as the owner, holds the copyright registration on the Motion Picture, including Copyright Registration Number PA0001746714 ("the '714 Copyright"). See Exhibit B, Certificate of Registration.

32. Under the Copyright Act, West Coast Productions is the proprietor of all right, title, and interest in the '714 Copyright, including the right to sue for past infringement.

33. Under the Copyright Act, Plaintiff also possesses the exclusive rights to reproduce the copyrighted work and to distribute the copyrighted work to the public.

34. Defendants had notice of Plaintiff's copyright rights. Plaintiff's Motion Picture DVD displays a copyright notice and warning that "duplication of this copyrighted material without prior licensing is forbidden by federal law."

### COPYRIGHT INFRINGEMENT AND BITTORRENT

35. BitTorrent is a peer-to-peer file sharing protocol used for copying and distributing data on the Internet, including files containing digital versions of motion pictures. Rather than downloading a file from a single source, the BitTorrent protocol allows users to join a swarm, or group of users to download and upload from each other simultaneously. The process works as follows:

36. Users intentionally download a small program that they install on their computers – the BitTorrent "client" application. The BitTorrent client is the user's interface during the downloading/uploading process. There are many different BitTorrent clients, all of which are readily available on the internet for free.

37. BitTorrent client applications typically lack the ability to search for torrent files. To find torrent files available for download (as made available by other BitTorrent users), users intentionally visit torrent sites using any standard web browser.

38. A torrent site is a website that contains an index of torrent files being made available by other users (generally an extensive listing of movies and television programs, among other copyrighted content). The torrent site hosts and distributes small torrent files known as "torrent files." Although torrent files do not contain actual audio/visual media, they instruct a user's computer where to go and how to get the desired file. Torrent files interact with specific trackers, allowing the user to download the desired file.

39. The torrent file contains a unique hash identifier which is a unique identifier generated by a mathematical algorithm developed by the National Security Agency. This torrent file is tagged with the file's unique "info-hash," which acts as a "roadmap" to the IP addresses of other users who are sharing the media file identified by the unique info-hash, as well as specifics about the media file.

40. A BitTorrent tracker manages the distribution of files, connecting uploaders (those who are distributing content) with downloaders (those who are copying the content). A tracker directs a BitTorrent user's computer to other users who have a particular file, and then facilitates the download process from those users. When a BitTorrent user seeks to download a movie or television file, he or she merely clicks on the appropriate torrent file on a torrent site,

and the torrent file instructs the client software how to connect to a tracker that will identify where the file is available and begin downloading it. In addition to a tracker, a user can manage file distribution through a Peer Exchange and/or a Distributed Hash Table.

41. Files downloaded in this method are downloaded in hundreds of individual pieces. Each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same file. The effect of this technology makes every downloader also an uploader of the content. This means that every user who has a copy of the infringing material on a torrent network must necessarily also be a source of download for that material.

42. Thus, each IP address identified by the tracker is an uploading user who is currently running a BitTorrent client on his or her computer and who is currently offering the desired motion picture file for download. The downloading user's BitTorrent software then begins downloading the motion picture file without any further effort from the user, by communicating with the BitTorrent client programs running on the uploading users' computers.

43. The life cycle of a file shared using BitTorrent begins with just one individual – the initial propagator, sometimes called a "seeder." The initial propagator intentionally elects to share a torrent file with a torrent swarm. The original file, in this is Hash 9A43, which provides access to Plaintiff's copyrighted Motion Picture.

44. Other members of the swarm connect to the respective seeds to download the files, wherein the download creates an exact digital copy of Plaintiff's copyrighted Motion Picture on the downloaders' computers. For the swarm, as additional infringers request the same file, each additional infringer joins the collective swarm, and each new infringer receives pieces of the file from each other infringer in the swarm who has already downloaded any part of the file. Eventually, once the initial propagator has distributed each piece of the file to at least one

other infringer, so that together the pieces downloaded by members of the swarm comprise the whole Motion Picture when reassembled, the initial propagator may leave the swarm, and the remaining infringers can still obtain a full copy of the Motion Picture by exchanging the pieces of the Motion Picture that each one has.

45. Files downloaded in this method are received in hundreds or even thousands of individual pieces. Each piece may be contributed from a different member of the swarm. Moreover, each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same complete file. Thus, the effect of this technology effectively makes every downloader of the content also an uploader. This means that every user who has a copy of the infringing material in a swarm may also be a source for later downloaders of that material.

46. This distributed nature of BitTorrent leads to a rapid viral sharing of a file throughout the collective peer users. As more peers join the collective swarm, the frequency of successful downloads also increases. Because of the nature of the BitTorrent protocol, any user that has downloaded a file prior to the time that a subsequent peer downloads the same file is automatically a source for the subsequent peer, so long as that first peer is online at the time the subsequent peer requests the file from the swarm. Because of the nature of the collective swarm, every infringer is – and by necessity all infringers together are – simultaneously both stealing the Plaintiff's copyrighted material and redistributing it.

47. Plaintiff has recorded each Defendant named herein actually publishing the Motion Picture via BitTorrent.

48. Plaintiff's Motion Picture is easily discernable as a professional work. Plaintiff created the Motion Picture using professional performers, directors, cinematographers, lighting

technicians, set designers and editors. Plaintiff created the Motion Picture with professional-grade cameras, lighting, and editing equipment.

49. Plaintiff's Motion Picture DVD is marked with a copyright notice stating that "duplication of this copyrighted material without prior licensing is forbidden by Federal Law."

50. At various times, Plaintiff discovered and documented its copyrighted Motion Picture being publicly distributed by Does 1-1,980 by and through the BitTorrent network.

51. Defendants, without authorization, copied and distributed the audiovisual Motion Picture owned by and registered to Plaintiff in violation of 17 U.S.C. §§ 106(1) and (3).

### DEFENDANTS ARE MEMBERS OF A SINGLE BITTORRENT SWARM

52. Defendants are peer members who have each participated in one P2P network swarm that was utilized to unlawfully infringe upon Plaintiff's exclusive rights in its copyrighted Motion Picture without permission.

53. Each Defendant initiated his or her infringement by searching for and obtaining a torrent file containing information sufficient to locate and download Plaintiff's copyrighted Motion Picture. Thereafter, each Defendant opened the torrent file using a bitTorrent client application that was specifically developed to read such file.

54. The unique file identifier associated with the instant action is Hash 9A43. Each Defendant is a member of the swarm.

55. Each John Doe Defendant owns or otherwise has control of a different computer collectively connected to the Internet via an IP address that contained – or possibly still contains – a torrent file identifying Plaintiff's copyrighted Motion Picture. Each computer also contained or still contains Plaintiff's copyrighted Motion Picture, which was downloaded using the information encoded in the torrent file.

56. All of the Defendants republished and duplicated the Plaintiff's Motion Picture in an effort to deprive the Plaintiff of its exclusive rights in the Motion Picture under the Copyright Act.

57. Although it is not required to do so, Plaintiff sent numerous Digital Millennium Copyright Act "take down" letters regarding its Motion Picture. *See, e.g.*, Exhibit C. These letters were sent out to prevent BitTorrent websites from allowing future copyright infringements of Plaintiff's Motion Picture.

58. Despite these letters, Plaintiff believes that additional defendants will continue to infringe its copyright, and therefore may need to be added to this action.

## COUNT I
## DIRECT COPYRIGHT INFRINGEMENT

59. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.

60. Plaintiff is, and at all relevant times, has been, the copyright owner of the Motion Picture infringed upon by all Defendants.

61. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Motion Picture and to distribute the Motion Picture to the public.

62. The Plaintiff alleges that each Defendant, without the permission or consent of the Plaintiff, has used, and continues to use, BitTorrent software to download the Motion Picture, to distribute the Motion Picture to the public, including hundreds of other BitTorrent users, and/or to make the Motion Picture available for distribution to others. In doing so, Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions

constitute infringement of Plaintiff's copyright and exclusive rights under copyright. Exhibit A identifies the Doe Defendants known to Plaintiff as of the date of this Complaint who have, without the permission or consent of Plaintiff, distributed the copyrighted Motion Picture *en masse*, through a public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or Distributed Hash Tables.

63. Each Defendant's acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

64. As a result of each Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

65. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyright and ordering that each Defendant destroy all copies of the copyrighted motion picture made in violation of Plaintiff's exclusive rights to the copyright.

## COUNT II
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

66. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 64 as if fully set forth herein.

67. Plaintiff is, and at all relevant times, has been, the copyright owner of the Motion Picture infringed upon by all Defendants.

68. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Motion Picture and to distribute the Motion Picture to the public.

69. The Plaintiff alleges that each Defendant, without the permission or consent of the Plaintiff, has participated in a BitTorrent swarm directed at making the Motion Picture available for distribution to himself or herself as well as others, has used, and continues to use, BitTorrent software to download the Motion Picture, to distribute the Motion Picture to the public, including hundreds of other BitTorrent users, and/or to make the Motion Picture available for distribution to others. In doing so, Defendants have violated Plaintiff's exclusive rights of reproduction and distribution.

70. By participating in the BitTorrent swarms with other Defendants, each Defendant induced, caused or materially contributed to the infringement of Plaintiff's copyright and exclusive rights under copyright by other Defendants and other swarm members. Exhibit A identifies the Doe Defendants known to Plaintiff as of the date of this Complaint who have, without the permission or consent of Plaintiff, contributed to the infringement of Plaintiff's copyright by other Defendants and other swarm members.

71. Each Defendant's acts of contributory infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

72. As a result of each Defendant's contributory infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

73. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury. Pursuant to 17 U.S.C. §§

502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further contributing to the infringement of Plaintiff's copyright and ordering that each Defendant destroy all copies of the copyrighted motion picture made in violation of Plaintiff's exclusive rights to the copyright.

WHEREFORE, Plaintiff prays for judgment against each Defendant as follows:

A. For entry of preliminary and permanent injunctions providing that each Defendant shall be enjoined from directly or indirectly infringing Plaintiff's rights in the copyrighted Motion Picture and any motion picture, whether now in existence or later created, that is owned, licensed to, or controlled by Plaintiff ("Plaintiff's Motion Pictures"), including without limitation by using the internet to reproduce or copy Plaintiff's Motion Pictures, to distribute Plaintiff's Motion Pictures, or to make Plaintiff's Motion Pictures available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Defendant also shall destroy all copies of Plaintiff's Motion Pictures that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization and shall destroy all copies of those downloaded Motion Pictures transferred onto any physical medium or device in each Defendant's possession, custody, or control.

B. For actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of the Plaintiff.

C. For Plaintiff's costs.

D. For Plaintiff's reasonable attorney's fees.

E. For such other and further relief as the Court deems proper.

                                        Respectfully submitted,
                                        PLAINTIFF WEST COAST PRODUCTIONS, INC.

                                        By its attorneys,
                                        SIMMONS BROWDER GIANARIS
                                            ANGELIDES & BARNERD LLC

Dated:  June 15, 2012                          By: */s/ Paul A. Lesko*
                                        Paul A. Lesko – LA Bar No. 26567
                                        One Court Street
                                        Alton, IL 62002
                                        (618) 259-2222
                                        (618) 259-2251-*facsimile*
                                        plesko@simmonsfirm.com